1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN VOUA LEE, | ) 1:11-cv-01789 GSA |
| | ) |
| Plaintiff, | ) **ORDER REGARDING PLAINTIFF'S** |
| | ) **SOCIAL SECURITY COMPLAINT** |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BACKGROUND

Plaintiff Kevin Voua Lee ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for

disability insurance and supplemental security income benefits pursuant to Titles II and XVI of

the Social Security Act.  The matter is currently before the Court on the parties' briefs, which

were submitted, without oral argument, to the Honorable Gary A. Austin, United States

Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  (*See* Docs. 8 & 10.)

1

**FACTS AND PRIOR PROCEEDINGS**[2]

2   In May 2008, Plaintiff filed applications for benefits, alleging disability beginning March

3   15, 2008. *See* AR 91-97. Plaintiff's application was denied initially and on reconsideration, and

4   Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 48-51, 57-61, 64.

5   ALJ T. Patrick Hannon held a hearing and issued an order denying benefits on September 9,

6   2010, finding Plaintiff was not disabled. AR 13-23. Thereafter, on August 26, 2011, the

7   Appeals Council denied review. AR 1-3.

8   **Hearing Testimony**

9   ALJ Hannon held a hearing on July 7, 2010, in Fresno, California. Plaintiff appeared and

10  was assisted by Gregory Elovich,[3] as well as a Hmong language interpreter. Vocational Expert

11  ("VE") Thomas Dachelet was also present. AR 32-43.

12  ALJ Hannon and Mr. Elovich engaged in a discussion regarding a number of the exhibits

13  that were admitted into evidence (AR 35-42), however, neither Plaintiff nor VE Dachelet

14  testified at the administrative hearing (AR 42-43).

15  **Medical Record**

16  The entire medical record was reviewed by the Court. AR 122-282. The medical

17  evidence will be referenced below as necessary to this Court's decision.

18  **ALJ's Findings**

19  Using the Social Security Administration's five-step sequential evaluation process, the

20  ALJ determined that Plaintiff did not meet the disability standard. AR 13-23.

21  More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful

22  activity since March 15, 2008. AR 15. Further, the ALJ identified gout, high blood pressure,

23  high cholesterol and post-traumatic stress disorder as severe impairments. AR 15. Nonetheless,

24  ────────────────

25  [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

26

27  [3]Mr. Elovich referred to himself as an "attorney with Central California Legal Services" (AR 334) whereas ALJ Hannon identified Mr. Elovich as "a non-attorney representative" (AR 13); the Court consulted The State Bar of California's website, but did not identify a "Gregory Elovich" as a member of the California State Bar, nor did a search of last names beginning with an "E" coupled with a first name that contained "Greg" in the Fresno area result

28  in any finding. *See* http://members.calbar.ca.gov/fal/MemberSearch. *See also* AR 54, 56.

1  the ALJ determined that the severity of the Plaintiff's impairment did not meet or exceed any of

2  the listed impairments.  AR 15-17.

3        Based on his review of the entire record, the ALJ determined that Plaintiff has the

4  residual functional capacity ("RFC") to perform sedentary work with a limitation to simple and

5  repetitive tasks consistent with unskilled work.  AR 17-21.

6        Next, the ALJ determined that Plaintiff was unable to perform his past relevant work as a

7  non-profit project manager.  AR 21.  However, based upon Plaintiff's age, education, work

8  experience and RFC, the ALJ determined there were jobs that existed in significant numbers in

9  the national economy that Plaintiff could perform.  AR 21-22.  Therefore, the ALJ found Plaintiff

10  was not disabled.  AR 22-23.

11                                  <u>**SCOPE OF REVIEW**</u>

12        Congress has provided a limited scope of judicial review of the Commissioner's decision

13  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

14  this Court must determine whether the decision of the Commissioner is supported by substantial

15  evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

16  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

17  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

18  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

19  401.  The record as a whole must be considered, weighing both the evidence that supports and

20  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

21  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

22  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

23  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

24  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

25  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

26  Cir. 1987).

27

28

1

## REVIEW

2        In order to qualify for benefits, a claimant must establish that he is unable to engage in

3   substantial gainful activity due to a medically determinable physical or mental impairment which

4   has lasted or can be expected to last for a continuous period of not less than twelve months.  42

5   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

6   such severity that he is not only unable to do her previous work, but cannot, considering his age,

7   education, and work experience, engage in any other kind of substantial gainful work which

8   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

9   The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

10  Cir. 1990).

11

## DISCUSSION

12  ### The ALJ's Assessment of the Medical Evidence

13       Plaintiff claims the ALJ erred by failing to provide specific and legitimate reasons for

14  rejecting the opinions of both an examining physician and a treating physician.  (Doc. 14 at 5-11

15  & Doc. 18 at 3-7.)  The Commissioner contends however that the ALJ provided specific and

16  legitimate reasons for affording each doctor's opinion its weight, and that the ALJ's findings are

17  supported by substantial evidence.  (Doc. 17 at 5-8.)

18      **1.**     **The Applicable Legal Standards**

19       Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

20  who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

21  (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

22  physicians).  As a general rule, more weight should be given to the opinion of a treating source

23  than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

24  647 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another

25  doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d

26  1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another

27  doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

28

1  reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722

2  F.2d 499, 502 (9th Cir. 1983).

3      The opinion of an examining physician is, in turn, entitled to greater weight than the

4  opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

5  *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating

6  physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

7  uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506.  And like the opinion

8  of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

9  can only be rejected for specific and legitimate reasons that are supported by substantial evidence

10  in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

11      The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

12  that justifies the rejection of the opinion of either an examining physician or a treating physician.

13  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can

14  reject the opinion of a treating or examining physician, based in part on the testimony of a

15  nonexamining medical advisor.  *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th

16  Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995).  For

17  example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating

18  physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the

19  opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752 (emphasis in

20  original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ

21  also relied on laboratory test results, on contrary reports from examining physicians, and on

22  testimony from the claimant that conflicted with her treating physician's opinion.  *Id*. at 751-52.

23      **2.     Summary of the Relevant Medical Evidence**

24          **A.     *James Nowlan, M.D.***

25      On July 22, 2008, internist James Nowlan, M.D., performed an internal medicine

26  evaluation of Plaintiff.  AR 147-150.

27      More particularly, the doctor recorded Plaintiff's chief complaints of gout, heart trouble,

28  high blood pressure, back pain, kidney stones and watery eyes.  AR 147.  Plaintiff reported he

was diagnosed with gout in 1996, and has been in pain ever since.  He feels pain in his elbows,

feet, knees, and hands.  AR 147.  Plaintiff also suffers from chest pain and nitroglycerin helps

somewhat.  AR 147-148.  For the previous two years, he has suffered from progressively

worsening back pain following an accident.  AR 148.  Finally, Plaintiff indicated he had kidney

stones two years ago.  AR 148.  After noting Plaintiff's daily activities consisted of "stay[ing] at

home," Dr. Nowlan recorded the various medications prescribed to Plaintiff.  AR 148.

        Dr. Nowlan's physical examination results noted that Plaintiff "looked well."  AR 148.

His blood pressure was recorded as 156/95, pulse 83 and respirations 20.  AR 148.  Normal

findings were recorded with regard to Plaintiff's eyes, ears/nose/throat, neck/nodes and

chest/lungs, abdomen and peripheral pulses.  AR 148-149.  Cardiovascular findings recorded

regular rate and rhythm, no extra sounds or murmurs were heard, and no edema was noted.  AR

148.  With regard to coordination/station/gait, Dr. Nowlan indicated Plaintiff was unable to

perform the heel-to-toe test due to pain in his feet.  The finger-to-nose and Romberg tests were

normal.  AR 149.  Range of motion findings were largely normal regarding the spine, ankles,

shoulders, elbow joints, and wrist joints.  AR 149.  Plaintiff complained of pain during the range

of motion examination testing of the hip and knee joints.  AR 149.  Additionally, with regard to

Plaintiff's finger and thumb joints, Dr. Nowlan reported the metacarpophalangeal and proximal

interphalangeal joints were limited to approximately fifty degrees of movement, the joints were

swollen, red and warm, and there "seemed to be synovial[4] thickening" around the wrists in the

ulnar groove and around the toes and knees.  AR 149.  Motor strength was recorded at 5 of 5, and

the sensory and deep tendon reflex findings were normal.  AR 149-150.

        Dr. Nowlan diagnosed rheumatoid arthritis "in a fairly quiescent[5] stage . . .  Even

though he is not being treated."  AR 150.  Dr. Nowlan opined that Plaintiff was capable of

standing or walking for three hours in an eight-hour workday.  Plaintiff's ability to sit was

---

    [4]Synovial is defined as "of, relating to, or secreting synovial fluid <synovial effusion>; also: lined with synovial membrane <a synovial bursa> <synovial tendon sheaths>."  Http://www.merriam-webster.com/dictionary/synovial (Medical Dictionary).

    [5]Quiescent is defined as follows: "marked by inactivity or repose; tranquility at rest" and "causing no trouble or symptoms."  See http://www.merriam-webster.com/dictionary/quiescent.

unlimited, he did not require an assistive device, and could lift ten pounds frequently and twenty

pounds occasionally.  The doctor indicated Plaintiff had "manipulative limitations because of

lack of movement in his hands due to swelling and pain" and "some postural limitations because

of pain in his feet."  AR 150.

### B.     *John V. Dko, M.D.*

John V. Dko, M.D., a treating physician with the Kings Winery Medical Group,

completed a Medical Source Statement and Physical Capacities Statement on or about June 24,

2010.  AR 249-253.

Dr. Dko indicated he has been treating Plaintiff since April 16, 2009, for foot pain, chest

pain, dizziness, cough, sneezing, runny nose, headache, knee pain, body ache, joint pain, stomach

ache, muscle pain and "handache."  AR 249.  Dr. Dko's diagnoses and onset dates included the

following:

> Hyperuricemia (3/10)
> Gastritis (2nd H. Pylori) (5/09)
> HTN (7/09)
> Angina (4/09)
> Arthralgia (4/09)
> Hypercholesterolemia (5/09)

AR 249.  The doctor recorded an EKG and laboratory findings regarding cholesterol and uric

acid levels as objective findings in support of his opinions.  AR 250.  Dr. Dko indicated

Plaintiff's symptoms were "well controlled" and his prognosis was good.  AR 250.  When asked

whether there was a reasonable expectation that Plaintiff's diagnosis and prognosis would

improve with continued treatment, Dr. Dko stated "possibly."  AR 251.  Further, the doctor

indicated that Plaintiff's ability to perform work at any level of exertion was "[p]robable

depending on level of improvement."  AR 251.  Finally, Dr. Dko indicated he could not

determine a date upon which Plaintiff would regain his ability to work.  AR 251.

With specific regard to functional limitations, Dr. Dko found Plaintiff could never:

climb, push/pull with hands or arms, work at unprotected heights, work under temperature

extremes, use moving machinery or be exposed to dust or fumes.  Plaintiff could occasionally

stoop, kneel, bend at the waist, crouch, crawl, use foot controls and perform fine manipulations.

AR 252.  Lastly, Dr. Dko opined that Plaintiff could frequently balance, use both hands to

perform simple grasping, and reach above shoulder level.  AR 252.  An additional restriction was

noted: "No prolong[ed] exertion."  AR 252.  The doctor based his opinion regarding these

limitations on the objective findings of "SOB, palpitations, chest pain and angina."  AR 252.  On

the last page, Dr. Dko concluded Plaintiff could "perform NO work at any level of physical

exertion."  AR 253.

### 3.   ALJ Hannon's Findings

ALJ Hannon found as follows with regard to the opinions of Drs. Nowlan and Dko:

> On July 22, 2008, consultative examiner Dr. Nowlan examined the
> claimant.  The claimant complained of gout, resulting in pain in his elbows, feet,
> knees, and hands; chest pain in the left anterior chest, helped by nitroglycerin;
> tenderness in the chest; constant back pain, worsened by activity; and kidney
> stones.  Dr. Nowlan noted a normal examination except for some pain in the feet.
> Dr. Nowlan opined that the claimant would have the following
> limitations/restrictions:
> - Stand/walk three hours in an eight hour day
> - Unlimited sitting
> - Lift ten pounds frequently and ten pounds occasionally
> - Manipulative limitations due to swelling and pain in the hands
> - Postural limitations due to pain in the feet
>
> The undersigned gives significant weight to Dr. Nowlan's opinion to the
> extent it is consistent with the undersigned's assessed residual functional capacity
> because it is well-supported and overall consistent with the record as a whole.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> On June 24, 2010, a physician (name illegible) at the Kings Winery
> Medical Clinic completed a "Medical Source Statement and Physical Capacities
> Assessment" opining that the claimant would have limitations more restrictive
> than that assessed by the undersigned.  The undersigned gives very little weight to
> the physician's opinion.  Firstly, this physician acknowledged that he has only
> treated claimant since April 16, 2009, which does not constitute a longitudinal
> treatment history.  Secondly, a review of the signature of the doctor that signed the
> claimant's treatment records does not match the signature of the physician on the
> medical source statement.  At least some of the treatment records were signed by a
> physician's assistant.  The medical source statement has a stamp of a physician's
> assistant at the bottom.  The undersigned finds it reasonable to conclude that the
> physician's assistant completed this form and the doctor signed it, or in the
> alternative, that the doctor has not been present for many of the claimant's
> examinations.  Thirdly, the medical source statement indicates onset dates of
> 2009-2010 for the claimant's various impairments.  Fourthly, the medical source
> statement contains inconsistencies, with the doctor noting that the claimant's
> impairments were well controlled and that he had a good prognosis yet opining
> that the claimant would have severe limitations and could not work.  Finally, the
> medical source statement is not well-supported, is conclusory, and is not
> consistent with the treatment notes and the record as a whole.

AR 18-19, internal citations omitted.

1      **4.      Analysis**

2              **A.      Dr. Nowlan**

3      The ALJ did not provide specific and legitimate reasons for discounting a limitation

4  identified in Dr. Nowlan's opinion.

5      ALJ Hannon described Dr. Nowlan's exam as normal "except for some pain in the feet,"

6  then listed the limitations and restrictions expressly identified by Dr. Nowlan.  *See* AR 19.

7  Unfortunately, other than indicating that he afforded significant weight to Dr. Nowlan's opinion

8  to the extent the opinion was consistent with his RFC, the ALJ failed to provide specific and

9  legitimate reasons for not adopting the manipulative limitations "due to swelling and pain in the

10  hands" recommended by Dr. Nowlan.[6]

11      Dr. Nowlan's examination revealed limited range of motion in the metacarpophalangeal

12  and proximal interphalangeal joints, and noted the joints in Plaintiff's fingers and thumbs were

13  swollen, red and warm.  Moreover, the doctor noted thickening in Plaintiff's wrists.  *See* AR 149.

14      Because ALJ Hannon's RFC does not provide for any manipulative limitation - it calls

15  for sedentary work and a limitation to simple, repetitive tasks - and because the ALJ failed to

16  provide any specific and legitimate reason for discounting Dr. Nowlan's opinion that

17  manipulative limitations "due to swelling and pain in the hands" were necessary, this matter will

18  be remanded to allow the ALJ an opportunity to specifically address Dr. Nowlan's examination

19  findings, and to consider whether an additional consultative examination should be obtained.

20              **B.      Dr. Dko**

21      The ALJ did provide specific and legitimate reasons for discounting the opinion of Dr.

22  Dko.

23      More particularly, ALJ Hannon assigned the opinion "very little weight" because (1) it

24  did not constitute a longitudinal treatment history, (2) it may not have been prepared by the

25  ─────────────────

26      [6]Notably too, Dr. Nowlan did not himself explain what those manipulative limitations might be.
Nevertheless, the ALJ should have addressed the issue and followed up with the physician regarding any ambiguity.

27  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (holding that ALJs have a duty fully and fairly to
develop the record when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of

28  the evidence).

1  doctor himself, but rather by a physician's assistant, (3) it provided onset dates for Plaintiff's

2  various impairments some of which constitute an impairment lasting less than the required

3  twelve months, (4) it was internally inconsistent, and (5) it was inconsistent with the treatment

4  notes and the record as a whole.

5      Assuming only for the sake of argument that the first three reasons were improper, ALJ

6  Hannon's other proffered reasons are specific and legitimate.

7      Here, Dr. Dko's statement is internally inconsistent because it provides that with regard to

8  the effectiveness of treatment and prognosis, Plaintiff's symptoms are "well controlled" and the

9  prognosis is "good." AR 250. Yet on the next page the doctor responded "possibly" to an

10 inquiry about whether the conditions would improve with continued treatment. *See* AR 251.

11 The doctor then indicated, in response to whether or not his patient could perform work "at any

12 level of physical exertion," the following: "Probable depending on level of improvement." AR

13 251. Then, despite the well controlled symptoms and "good" prognosis, Dr. Dko stated he was

14 unable to determine - in months or years - when his patient might regain the ability to work. AR

15 251. Next, Dr. Dko identified a number of limitations faced by Plaintiff, yet those limitations

16 themselves do not restrict Plaintiff from all work. In fact, those restrictions and limitations

17 identified by the doctor would seem to comport with the sedentary work described on the

18 following page. *Cf.* AR 252 to 253. Rejecting an opinion that contains internal inconsistencies

19 is a specific and legitimate reason to discount the opinion. *Roberts v. Shalala*, 66 F.3d 179, 184

20 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted

21 with his own written report and test results); *see also Buckner-Larkin v. Astrue*, 2011 WL

22 4361652 (9th Cir. Sept. 20, 2011).

23     Additionally, ALJ Hannon found that Dr. Dko's opinion was conclusory, "not well

24 supported" and inconsistent with the treatment notes and the record as a whole. The Court's

25 review of the records of the Kings Winery Medical Clinic finds support for the ALJ's assertion.

26 *See* AR 259-260, 262-263, 265, 267-268, 270, 272-282. A brief and conclusionary form opinion

27 which lacks supporting clinical findings is a legitimate reason to reject a treating physician's

28 conclusion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

1  In conclusion, even assuming for the sake of argument that some reasons set forth by ALJ
2  Hannon with regard to the rejection of Dr. Dko's opinion are not supported by substantial
3  evidence, this Court finds that the opinion is internally inconsistent, is conclusory, and is
4  inconsistent with the treatment notes and the medical record as a whole.  Therefore, for those
5  reasons, the ALJ did not err.  He offered specific and legitimate reasons for rejecting the opinion
6  supported by substantial evidence.

**CONCLUSION**

8  Based on the foregoing, the Court finds that the ALJ's decision is not supported by
9  substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for
10  further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter
11  judgment in favor of Plaintiff Kevin Voua Lee and against Defendant Michael J. Astrue,
12  Commissioner of Social Security.

14  IT IS SO ORDERED.
15  **Dated:    October 10, 2012              /s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE