<div style="text-align:center">

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

</div>

| | |
|---|---|
| KEVIN VOUA LEE, | ) 1:11-cv-01789 GSA |
| Plaintiff, | ) **ORDER REGARDING PLAINTIFF'S** |
| v. | ) **SOCIAL SECURITY COMPLAINT** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Kevin Voua Lee ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability insurance and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary A. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  (*See* Docs. 8 & 10.)

1

**FACTS AND PRIOR PROCEEDINGS**[2]

In May 2008, Plaintiff filed applications for benefits, alleging disability beginning March 15, 2008. *See* AR 91-97. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 48-51, 57-61, 64. ALJ T. Patrick Hannon held a hearing and issued an order denying benefits on September 9, 2010, finding Plaintiff was not disabled. AR 13-23. Thereafter, on August 26, 2011, the Appeals Council denied review. AR 1-3.

**Hearing Testimony**

ALJ Hannon held a hearing on July 7, 2010, in Fresno, California. Plaintiff appeared and was assisted by Gregory Elovich,[3] as well as a Hmong language interpreter. Vocational Expert ("VE") Thomas Dachelet was also present. AR 32-43.

ALJ Hannon and Mr. Elovich engaged in a discussion regarding a number of the exhibits that were admitted into evidence (AR 35-42), however, neither Plaintiff nor VE Dachelet testified at the administrative hearing (AR 42-43).

**Medical Record**

The entire medical record was reviewed by the Court. AR 122-282. The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 13-23.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 15, 2008. AR 15. Further, the ALJ identified gout, high blood pressure, high cholesterol and post-traumatic stress disorder as severe impairments. AR 15. Nonetheless,

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Mr. Elovich referred to himself as an "attorney with Central California Legal Services" (AR 334) whereas ALJ Hannon identified Mr. Elovich as "a non-attorney representative" (AR 13); the Court consulted The State Bar of California's website, but did not identify a "Gregory Elovich" as a member of the California State Bar, nor did a search of last names beginning with an "E" coupled with a first name that contained "Greg" in the Fresno area result in any finding. *See* http://members.calbar.ca.gov/fal/MemberSearch. *See also* AR 54, 56.

the ALJ determined that the severity of the Plaintiff's impairment did not meet or exceed any of the listed impairments. AR 15-17.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with a limitation to simple and repetitive tasks consistent with unskilled work. AR 17-21.

Next, the ALJ determined that Plaintiff was unable to perform his past relevant work as a non-profit project manager. AR 21. However, based upon Plaintiff's age, education, work experience and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 21-22. Therefore, the ALJ found Plaintiff was not disabled. AR 22-23.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

**DISCUSSION**

*The ALJ's Assessment of the Medical Evidence*

Plaintiff claims the ALJ erred by failing to provide specific and legitimate reasons for rejecting the opinions of both an examining physician and a treating physician. (Doc. 14 at 5-11 & Doc. 18 at 3-7.) The Commissioner contends however that the ALJ provided specific and legitimate reasons for affording each doctor's opinion its weight, and that the ALJ's findings are supported by substantial evidence. (Doc. 17 at 5-8.)

    **1.**    **The Applicable Legal Standards**

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

1 reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752 (emphasis in original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

**2.   Summary of the Relevant Medical Evidence**

   **A.   *James Nowlan, M.D.***

On July 22, 2008, internist James Nowlan, M.D., performed an internal medicine evaluation of Plaintiff. AR 147-150.

More particularly, the doctor recorded Plaintiff's chief complaints of gout, heart trouble, high blood pressure, back pain, kidney stones and watery eyes. AR 147. Plaintiff reported he

5

was diagnosed with gout in 1996, and has been in pain ever since. He feels pain in his elbows, feet, knees, and hands. AR 147. Plaintiff also suffers from chest pain and nitroglycerin helps somewhat. AR 147-148. For the previous two years, he has suffered from progressively worsening back pain following an accident. AR 148. Finally, Plaintiff indicated he had kidney stones two years ago. AR 148. After noting Plaintiff's daily activities consisted of "stay[ing] at home," Dr. Nowlan recorded the various medications prescribed to Plaintiff. AR 148.

Dr. Nowlan's physical examination results noted that Plaintiff "looked well." AR 148. His blood pressure was recorded as 156/95, pulse 83 and respirations 20. AR 148. Normal findings were recorded with regard to Plaintiff's eyes, ears/nose/throat, neck/nodes and chest/lungs, abdomen and peripheral pulses. AR 148-149. Cardiovascular findings recorded regular rate and rhythm, no extra sounds or murmurs were heard, and no edema was noted. AR 148. With regard to coordination/station/gait, Dr. Nowlan indicated Plaintiff was unable to perform the heel-to-toe test due to pain in his feet. The finger-to-nose and Romberg tests were normal. AR 149. Range of motion findings were largely normal regarding the spine, ankles, shoulders, elbow joints, and wrist joints. AR 149. Plaintiff complained of pain during the range of motion examination testing of the hip and knee joints. AR 149. Additionally, with regard to Plaintiff's finger and thumb joints, Dr. Nowlan reported the metacarpophalangeal and proximal interphalangeal joints were limited to approximately fifty degrees of movement, the joints were swollen, red and warm, and there "seemed to be synovial[4] thickening" around the wrists in the ulnar groove and around the toes and knees. AR 149. Motor strength was recorded at 5 of 5, and the sensory and deep tendon reflex findings were normal. AR 149-150.

Dr. Nowlan diagnosed rheumatoid arthritis "in a fairly quiescent[5] stage . . . Even though he is not being treated." AR 150. Dr. Nowlan opined that Plaintiff was capable of standing or walking for three hours in an eight-hour workday. Plaintiff's ability to sit was

---

[4] Synovial is defined as "of, relating to, or secreting synovial fluid <synovial effusion>; also: lined with synovial membrane <a synovial bursa> <synovial tendon sheaths>." Http://www.merriam-webster.com/dictionary/synovial (Medical Dictionary).

[5] Quiescent is defined as follows: "marked by inactivity or repose; tranquility at rest" and "causing no trouble or symptoms." See http://www.merriam-webster.com/dictionary/quiescent.

unlimited, he did not require an assistive device, and could lift ten pounds frequently and twenty pounds occasionally. The doctor indicated Plaintiff had "manipulative limitations because of lack of movement in his hands due to swelling and pain" and "some postural limitations because of pain in his feet." AR 150.

### B. *John V. Dko, M.D.*

John V. Dko, M.D., a treating physician with the Kings Winery Medical Group, completed a Medical Source Statement and Physical Capacities Statement on or about June 24, 2010. AR 249-253.

Dr. Dko indicated he has been treating Plaintiff since April 16, 2009, for foot pain, chest pain, dizziness, cough, sneezing, runny nose, headache, knee pain, body ache, joint pain, stomach ache, muscle pain and "handache." AR 249. Dr. Dko's diagnoses and onset dates included the following:

> Hyperuricemia (3/10)
> Gastritis (2nd H. Pylori) (5/09)
> HTN (7/09)
> Angina (4/09)
> Arthralgia (4/09)
> Hypercholesterolemia (5/09)

AR 249. The doctor recorded an EKG and laboratory findings regarding cholesterol and uric acid levels as objective findings in support of his opinions. AR 250. Dr. Dko indicated Plaintiff's symptoms were "well controlled" and his prognosis was good. AR 250. When asked whether there was a reasonable expectation that Plaintiff's diagnosis and prognosis would improve with continued treatment, Dr. Dko stated "possibly." AR 251. Further, the doctor indicated that Plaintiff's ability to perform work at any level of exertion was "[p]robable depending on level of improvement." AR 251. Finally, Dr. Dko indicated he could not determine a date upon which Plaintiff would regain his ability to work. AR 251.

With specific regard to functional limitations, Dr. Dko found Plaintiff could never: climb, push/pull with hands or arms, work at unprotected heights, work under temperature extremes, use moving machinery or be exposed to dust or fumes. Plaintiff could occasionally stoop, kneel, bend at the waist, crouch, crawl, use foot controls and perform fine manipulations.

AR 252.  Lastly, Dr. Dko opined that Plaintiff could frequently balance, use both hands to perform simple grasping, and reach above shoulder level.  AR 252.  An additional restriction was noted: "No prolong[ed] exertion."  AR 252.  The doctor based his opinion regarding these limitations on the objective findings of "SOB, palpitations, chest pain and angina."  AR 252.  On the last page, Dr. Dko concluded Plaintiff could "perform NO work at any level of physical exertion."  AR 253.

### 3. ALJ Hannon's Findings

ALJ Hannon found as follows with regard to the opinions of Drs. Nowlan and Dko:

> On July 22, 2008, consultative examiner Dr. Nowlan examined the claimant.  The claimant complained of gout, resulting in pain in his elbows, feet, knees, and hands; chest pain in the left anterior chest, helped by nitroglycerin; tenderness in the chest; constant back pain, worsened by activity; and kidney stones.  Dr. Nowlan noted a normal examination except for some pain in the feet.  Dr. Nowlan opined that the claimant would have the following limitations/restrictions:
> - Stand/walk three hours in an eight hour day
> - Unlimited sitting
> - Lift ten pounds frequently and ten pounds occasionally
> - Manipulative limitations due to swelling and pain in the hands
> - Postural limitations due to pain in the feet
>
> The undersigned gives significant weight to Dr. Nowlan's opinion to the extent it is consistent with the undersigned's assessed residual functional capacity because it is well-supported and overall consistent with the record as a whole.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> On June 24, 2010, a physician (name illegible) at the Kings Winery Medical Clinic completed a "Medical Source Statement and Physical Capacities Assessment" opining that the claimant would have limitations more restrictive than that assessed by the undersigned.  The undersigned gives very little weight to the physician's opinion.  Firstly, this physician acknowledged that he has only treated claimant since April 16, 2009, which does not constitute a longitudinal treatment history.  Secondly, a review of the signature of the doctor that signed the claimant's treatment records does not match the signature of the physician on the medical source statement.  At least some of the treatment records were signed by a physician's assistant.  The medical source statement has a stamp of a physician's assistant at the bottom.  The undersigned finds it reasonable to conclude that the physician's assistant completed this form and the doctor signed it, or in the alternative, that the doctor has not been present for many of the claimant's examinations.  Thirdly, the medical source statement indicates onset dates of 2009-2010 for the claimant's various impairments.  Fourthly, the medical source statement contains inconsistencies, with the doctor noting that the claimant's impairments were well controlled and that he had a good prognosis yet opining that the claimant would have severe limitations and could not work.  Finally, the medical source statement is not well-supported, is conclusory, and is not consistent with the treatment notes and the record as a whole.

AR 18-19, internal citations omitted.

**4.      Analysis**

    **A.      Dr. Nowlan**

The ALJ did not provide specific and legitimate reasons for discounting a limitation identified in Dr. Nowlan's opinion.

ALJ Hannon described Dr. Nowlan's exam as normal "except for some pain in the feet," then listed the limitations and restrictions expressly identified by Dr. Nowlan. *See* AR 19. Unfortunately, other than indicating that he afforded significant weight to Dr. Nowlan's opinion to the extent the opinion was consistent with his RFC, the ALJ failed to provide specific and legitimate reasons for not adopting the manipulative limitations "due to swelling and pain in the hands" recommended by Dr. Nowlan.[6]

Dr. Nowlan's examination revealed limited range of motion in the metacarpophalangeal and proximal interphalangeal joints, and noted the joints in Plaintiff's fingers and thumbs were swollen, red and warm. Moreover, the doctor noted thickening in Plaintiff's wrists. *See* AR 149.

Because ALJ Hannon's RFC does not provide for any manipulative limitation - it calls for sedentary work and a limitation to simple, repetitive tasks - and because the ALJ failed to provide any specific and legitimate reason for discounting Dr. Nowlan's opinion that manipulative limitations "due to swelling and pain in the hands" were necessary, this matter will be remanded to allow the ALJ an opportunity to specifically address Dr. Nowlan's examination findings, and to consider whether an additional consultative examination should be obtained.

    **B.      Dr. Dko**

The ALJ did provide specific and legitimate reasons for discounting the opinion of Dr. Dko.

More particularly, ALJ Hannon assigned the opinion "very little weight" because (1) it did not constitute a longitudinal treatment history, (2) it may not have been prepared by the

---

[6]Notably too, Dr. Nowlan did not himself explain what those manipulative limitations might be. Nevertheless, the ALJ should have addressed the issue and followed up with the physician regarding any ambiguity. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (holding that ALJs have a duty fully and fairly to develop the record when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence).

doctor himself, but rather by a physician's assistant, (3) it provided onset dates for Plaintiff's various impairments some of which constitute an impairment lasting less than the required twelve months, (4) it was internally inconsistent, and (5) it was inconsistent with the treatment notes and the record as a whole.

Assuming only for the sake of argument that the first three reasons were improper, ALJ Hannon's other proffered reasons are specific and legitimate.

Here, Dr. Dko's statement is internally inconsistent because it provides that with regard to the effectiveness of treatment and prognosis, Plaintiff's symptoms are "well controlled" and the prognosis is "good." AR 250. Yet on the next page the doctor responded "possibly" to an inquiry about whether the conditions would improve with continued treatment. *See* AR 251. The doctor then indicated, in response to whether or not his patient could perform work "at any level of physical exertion," the following: "Probable depending on level of improvement." AR 251. Then, despite the well controlled symptoms and "good" prognosis, Dr. Dko stated he was unable to determine - in months or years - when his patient might regain the ability to work. AR 251. Next, Dr. Dko identified a number of limitations faced by Plaintiff, yet those limitations themselves do not restrict Plaintiff from all work. In fact, those restrictions and limitations identified by the doctor would seem to comport with the sedentary work described on the following page. *Cf.* AR 252 to 253. Rejecting an opinion that contains internal inconsistencies is a specific and legitimate reason to discount the opinion. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also Buckner-Larkin v. Astrue*, 2011 WL 4361652 (9th Cir. Sept. 20, 2011).

Additionally, ALJ Hannon found that Dr. Dko's opinion was conclusory, "not well supported" and inconsistent with the treatment notes and the record as a whole. The Court's review of the records of the Kings Winery Medical Clinic finds support for the ALJ's assertion. *See* AR 259-260, 262-263, 265, 267-268, 270, 272-282. A brief and conclusionary form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

In conclusion, even assuming for the sake of argument that some reasons set forth by ALJ Hannon with regard to the rejection of Dr. Dko's opinion are not supported by substantial evidence, this Court finds that the opinion is internally inconsistent, is conclusory, and is inconsistent with the treatment notes and the medical record as a whole.  Therefore, for those reasons, the ALJ did not err.  He offered specific and legitimate reasons for rejecting the opinion supported by substantial evidence.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Kevin Voua Lee and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **October 10, 2012**                **/s/ Gary S. Austin**
                                              UNITED STATES MAGISTRATE JUDGE